UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARNITA MCGHEE,

    Plaintiff,                                        Case No. 14-cv-12753
                                                        Hon. Matthew F. Leitman

v.

MILLICENT WARREN, *et al.*,

    Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF #18)

Plaintiff Darnita McGhee ("McGhee") was an inmate at the Women's Huron Valley Correctional Facility ("WHV"). She has brought a civil rights action under 42 U.S.C. § 1983 against WHV's former Warden and Deputy Warden, Defendants Millicent Warren and Jodie DeAngelo respectively (collectively "Defendants"). McGhee claims that the Defendants violated her Fourth, Eighth, and Fourteenth Amendment rights by reassigning her to administrative segregation – where she spent 22 hours per day in her cell – and leaving her there for ten months without a full classification review hearing. (*See* ECF #1-1 at 6-8, Pg. ID 10-12; ECF #18-9 at 3-6, Pg. ID 149-152.) McGhee also claims that she did not receive adequate medical care while she was in administrative segregation. (ECF #19-1 at 46-47, Pg. ID 226-27.)

1

Defendants moved for summary judgment on qualified immunity grounds. (*See* ECF #9 at 5, Pg. ID 51.) On September 14, 2015, the Court held a hearing on the motion and announced on the record that it would GRANT the motion. At that same time, the Court explained the basis for its decision and indicated that it would issue a written order memorializing its ruling. For the reasons explained on the record at the conclusion of the hearing and in more detail below, the Court **GRANTS** the Defendants' motion for summary judgment in its entirety and **DISMISSES** this action with prejudice.

**ESSENTIAL FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On March 21, 2013, Assistant Resident Unit Supervisor Michael Nowak ("Nowak") reviewed WHV video footage and saw McGhee engage in a drug transaction and also expose herself to other prisoners. (*See* ECF #18-2 at 2, Pg. ID 106.) That same day, WHV Corrections Officer Donald ("Donald") strip searched McGhee and found four pills of Tegretol (a prescription medication for preventing and controlling seizures) on her person. (*See* ECF #18-3 at 2, Pg. ID 108.) Nowak issued McGhee a Class I misconduct violation for smuggling and for sexual misconduct (*see* ECF #18-2 at 2, Pg. ID 106); Donald issued McGhee a Class I misconduct violation for substance abuse. (*See* ECF #18-3 at 2, Pg. ID 108.) On March 25, 2013, a Michigan Department of Corrections ("MDOC") Hearing Officer found McGhee guilty of the substance abuse charge and sentenced her to

ten days in segregation – from March 25, 2013 until April 4, 2013. (*See* ECF #18-4 at 2, Pg. ID 110.)

On April 1, 2013, while McGhee was in segregation, another Hearing Officer found McGhee guilty of sexual harassment. (*See* ECF #18-4 at 2, Pg. ID 112.) That Hearing Officer sentenced McGhee to an additional fifteen days in segregation – from April 4, 2013 until April 19, 2013. (*Id.*)

Next, on April 16, 2013, WHV's Security Classification Committee ("SCC") reclassified McGhee to administrative segregation on the basis that she "[d]emonstrate[d] an inability to be managed with general population privileges." (*See* ECF #18-6 at 2, Pg. ID 114.) The SCC did not conduct a classification hearing before transferring McGhee to administrative segregation because McGhee had been found guilty of more than one Class I disciplinary offense. MDOC regulations provide that "[a] prisoner may be classified to administrative segregation after being found guilty of major / Class I misconduct" without an additional hearing following the inmate's initial misconduct hearing. (ECF #18-7 at 4, Pg. ID 118.)

McGhee remained in administrative segregation for approximately ten months after the reclassification. (*See* ECF #18 at 8, Pg. ID 89.) During McGhee's first 60 days in administrative segregation, the SCC reviewed McGhee's status on a weekly basis. (*See* ECF #18-8 at 2-3, Pg. ID 129-30.) Thereafter, the SCC

3

reviewed McGhee's status on a monthly basis. (*See* ECF #18-8 at 17, Pg. ID 144.) For nearly every "Segregation Behavior Review," SCC officials interviewed McGhee to determine whether she was prepared to return to general population based her responses and her level of cooperation with prison staff and other inmates. (*See* ECF #18-8 at 1-19; Pg. ID 128-46.) Each Segregation Behavior Review concluded that McGhee demonstrated a "medium" "potential to honor the trust implicit in less restrictive confinement." (*Id.*) McGhee was ultimately returned to the WHV general population on February 14, 2014. (*See* ECF #18 at 8, Pg. ID 89.)

On July 15, 2014, McGhee filed her two-count Complaint in this action against Defendants Warren and DeAngelo. She alleges that her status reclassification and the resulting time she spent in administrative segregation (1) violated her rights to equal protection and due process under the Fourteenth Amendment; (2) violated the Eighth Amendment's prohibition against cruel and unusual punishment; and (3) violated her Fourth Amendment right to be free from unreasonable searches and seizures. Additionally, McGhee now claims (but did not allege in her Complaint) that during the ten months she spent in administrative segregation, Defendants were deliberately indifferent to her medical needs in violation of the Eighth Amendment.

4

## GOVERNING LEGAL STANDARD

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted).  When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.*  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252.  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252.  Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

A.  **The Court's Two-Pronged Qualified Immunity Analysis**

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-part inquiry." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). "[B]oth [parts] must be answered in the affirmative for the case to go to a

factfinder . . . . If either one is not satisfied, qualified immunity will shield the officer from civil damages." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). "[U]nder either prong [of this inquiry], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 134 S. Ct. at 1866. The Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"The first [prong] asks whether the facts taken in the light most favorable to the party asserting injury show the officer's conduct violated a federal right." *Tolan*, 134 S. Ct. at 1865. "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1867.

"Governmental actors are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* "The sources of clearly established law to be considered are limited. [This Court must] look first to decisions of the Supreme Court, then to decisions of [the Court of Appeals for the Sixth Circuit] and other courts within [that] circuit, and finally to decisions of other circuits." *Martin*, 712 F.3d at 961.

6

### B.     Defendants Are Entitled to Qualified Immunity on McGhee's Procedural Due Process Claim

McGhee alleges that the Defendants violated her procedural due process rights by confining her in administrative segregation for ten months without affording her a full classification hearing. The Defendants are entitled to qualified immunity on this claim because it was not clearly established that the Due Process Clause required Defendants to give McGhee such a hearing.

"The Due Process Clause does not protect every administrative slight that occurs behind prison walls. It requires process only when a 'life, liberty, or property' interest is at stake." *Hardin-Bey v. Rutter*, 524 F.3d 789, 791 (6th Cir. 2008) (quoting U.S. Const. amend. XIV, § 1.) A prison inmate does retain "a 'liberty' interest, guarded by due process, with respect to state-imposed prison discipline that rises to the level of an 'atypical and significant hardship on the inmate.'" *Id.* (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). Thus, prison officials must provide some process before subjecting an inmate to an atypical and significant hardship. *Id.* The question in this case is whether McGhee's ten-month confinement in administrative segregation amounted to an atypical and significant hardship so as to trigger due process protection.

Neither the Supreme Court nor the Sixth Circuit have provided a clear answer to that question. The Supreme Court has held that thirty days in segregation is not so atypical as to create a liberty interest protected by the Due

7

Process Clause, *see Sandin*, 515 U.S. at 486, but that Court has not addressed the due process implications of confinement in administrative segregation for more than thirty days. The Sixth Circuit has held that 117 days in administrative segregation in a Michigan prison is not so atypical as to create a liberty interest subject to due process protection, *see Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997), but that court has also held that an inmate may have a protected liberty interest where he has served three years of an indefinite assignment to administrative segregation. *See Hardin-Bey*, 524 F.3d at 791. There are also a number of unpublished Sixth Circuit decisions holding that an inmate's placement in segregation for several months does *not* impose an atypical and significant hardship that gives rise to a protected liberty interest. *See, e.g.*, *McMann v. Gundy*, 39 Fed. App'x 208, 210 (6th Cir. 2002) (five months in segregation did not give rise to a liberty interest); *Collmar v. Wilkinson*, 187 F.3d 635 (Table), 1999 WL 623708, at *3 (6th Cir. 1999) (concluding "six to eight months in Administrative Control was not an atypical hardship" and did not give rise to a liberty interest).

Given these decisions from the Supreme Court and the Sixth Circuit, it would not have been clear to a reasonable prison official that a ten-month placement in administrative segregation gives rise to a protected liberty interest. Thus, Defendants are entitled to qualified immunity on McGhee's claim that they violated her procedural due process rights by confining her in administrative

segregation without providing sufficient process.[1] *See Saucier v. Katz,* 533 U.S. 194, 202 (2001) ("The relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

In support of her argument that her confinement in segregation gave rise to a clearly-established liberty interest, McGhee cites only the decision of the United States Court of Appeals in *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). In that decision, the Second Circuit held that placing an inmate in segregation for 305 days "was 'atypical' and a 'severe hardship' within the meaning of *Sandin*." *Id.* at 229. But this lone decision from another circuit is not enough to clearly establish that McGhee's ten-month stay in segregation gave rise to a protected liberty interest. *See, e.g., Eugene D v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989) ("[A] single recent case from the court of appeals of another circuit is hardly sufficient to make the law 'clearly established' in this circuit.") Because McGhee has not established that she had a clearly-established liberty interest sufficient to due

---

[1] Even if McGhee could establish that she had a protected liberty interest, she would face a formidable obstacle in establishing that the process provided by Defendants was insufficient. As described above, Defendants reviewed McGhee's placement in segregation on a weekly basis for the first 60 days of McGhee's confinement in segregation and then on a monthly basis thereafter. Defendants completed reports documenting their reviews and the reasons for continuing to confine McGhee in segregation. (*See* ECF #18-8 at 1-19; Pg. ID 128-46.) The Sixth Circuit has held that similar reviews provide sufficient process to satisfy the Due Process Clause. *See Harris v. Caruso*, 465 Fed. App'x 481, 485 (6th Cir. 2012).

process protections, the Defendants are entitled to qualified immunity on her procedural due process claim.

## B.   Defendants Are Entitled to Qualified Immunity on McGhee's Equal Protection Claim

McGhee claims that her confinement in administrative segregation also violated her right to equal protection under the Fourteenth Amendment. (*See* ECF #1-1 at 6, Pg. ID 10.)  In support of this claim, McGhee argues that other inmates who were found guilty of Class I misconduct offenses were not reclassified to administrative segregation, but she was placed in segregation for ten months after being found guilty of such violations.  (*See* ECF #19 at 10, Pg. ID 177.) Defendants are entitled to qualified immunity on this claim because McGhee has failed to demonstrate that she was similarly-situated to the other inmates and because Defendants had a rational basis for their decision to place her in segregation.

The Equal Protection Clause is "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).  "Thus, to prevail on [her] equal protection claim," McGhee "must demonstrate" that her placement in segregation "constitutes disparate treatment of similarly-situated individuals." *Robinson v. Jackson*, __ Fed. App'x __, 2015 WL 3650196, at \*4 (6th Cir. June 15, 2015) (rejecting inmate's equal protection claim). She has not carried that burden.  While she asserts that other inmates were not sent

to segregation after being found guilty of Class I misconduct violations, she does not provide sufficient information from which the Court could conclude that those inmates were, in fact, similarly-situated to her. For instance, she provides no information concerning the specific violations committed by the other inmates nor does she provide any information concerning the other inmates' disciplinary history and/or adjustment to prison life. The Court cannot conclude that inmates found guilty of similar offenses with similar disciplinary and adjustment records were treated differently than McGhee, and thus Defendants are entitled to qualified immunity on McGhee's equal protection claim.

Defendants are further entitled to qualified immunity on that claim because they had a rational basis for assigning McGhee to segregation. *See Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005) ("Without question, prisoners are not considered a suspect class for purposes of equal protection litigation."); *Trihealth, Inc. v. Bd. of Commissioners*, 430 F.3d 783, 790 (6th Cir. 2005) (holding rational basis review applies to claims in which no suspect class or fundamental right is implicated). The Defendants had a rational basis for placing McGhee in segregation because she had a history of committing serious misconduct offenses and a history of poor adjustment to confinement in the general population. Thus, McGhee cannot prevail on her equal protection claim.

## C. Defendants Are Entitled to Qualified Immunity on McGhee's Eighth Amendment Claims

The bases for McGhee's Eighth Amendment claim are unclear on the face of her complaint. However, McGhee appears to allege that (1) the conditions of confinement in administrative segregation were so deplorable that her continued confinement there constituted cruel and unusual punishment, and (2) the Defendants were deliberately indifferent to her serious medical needs while she was in administrative segregation (which McGhee alleges in her deposition testimony, not her complaint). Defendants are also entitled to qualified immunity on these claims for the reasons stated below.

### 1. McGhee's Placement in Administrative Segregation Was Not Cruel or Unusual Punishment Under the Eighth Amendment

In order to prevail on a conditions-of-confinement claim under the Eighth Amendment, an inmate must establish that she was deprived "of the minimal civilized measure of life's necessities." *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The restrictive conditions of administrative segregation do not impose such an extreme deprivation. On the contrary, "placement in administrative segregation is part of the routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society." *Harden-Bey*, 524 F.3d at 795 (quoting *Murray v. Unknown Evert*, 84 Fed. App'x. 553, 556 (6th Cir. 2003)). Thus, the Defendants did not violate McGhee's Eighth Amendment rights by

12

confining her in administrative segregation. *Id.* (affirming dismissal of Eighth Amendment conditions-of-confinement claim that was based upon placement of inmate in administrative segregation).

### 2. McGhee Has Failed to Establish That the Defendants Were Deliberately Indifferent to Her Serious Medical Needs

Under the Eighth Amendment, "prison officials are prohibited from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward the inmate's serious medical needs." *Baynes v. Cleland*, __ F.3d __, 2015 WL 5000615 at * 14 (6th Cir. Aug. 24, 2015) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)). To establish deliberate indifference, an inmate must satisfy "both an objective and a subjective component." *Id.* The Sixth Circuit recently explained an inmate's burden with respect to the two components as follows:

> To satisfy the objective component, Plaintiff must show the existence of a sufficiently serious medical need, meaning he is "incarcerated under conditions posing a substantial risk of serious harm." *Blackmore*, 390 F.3d at 895 (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Brown,* 207 F.3d 863, 867 (6th Cir. 2000)). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008).
>
> The subjective component is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place,* 313 Fed. App'x 810, 814 (6th Cir.

> 2008) (quoting *Farmer,* 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai,* 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir. 2003)).
>
> A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Harrison,* 539 F.3d at 518 (quoting *Farmer,* 511 U.S. at 837). An official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

*Baynes*, 2015 WL 5000615 at * 15.

Here, McGhee has presented evidence that (1) she suffered from fibroid tumors before, during, and after her time in administrative segregation and (2) the tumors caused her great pain while she was administrative segregation. (*See* ECF # 18-9 at 8, Pg. ID 154; ECF #19-1 at 17, Pg. ID 197.) The Court will assume without deciding that these tumors amounted to a serious medical condition which satisfied the objective component of her claim.

But McGhee has not presented any evidence that either of the Defendants – both high-ranking prison administrators who had no involvement in the direct delivery of healthcare to inmates – knew that she was afflicted with the tumors or that she was suffering serious health issues while in administrative segregation. McGhee says that a jury could infer Defendants' knowledge from the fact that someone in the prison administration authorized McGhee to be temporarily

14

removed from the prison in order to obtain medical testing relating to her condition. (*See* ECF #19 at 12, Pg. ID 179.) However, even if the Defendants knew that McGhee had been taken for testing, that would not amount to knowledge that McGhee was, in fact, suffering from a serious condition – especially in light of the fact that there is no evidence in the record that the Defendants were ever made aware of the test *results*. Moreover, if, as McGhee stresses, the Defendants authorized her to leave the prison for medical testing, that authorization would cut sharply against McGhee's claim that Defendants *disregarded* her medical needs. The point of the test would have been to *address* those very needs. Simply put, there is no evidence that the Defendants "[knew] of and disregard[ed] an excessive risk to inmate health or safety," *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), and thus McGhee cannot prevail on her deliberate indifference claim.

### D.     McGhee Has Withdrawn Her Fourth Amendment Claim

McGhee has withdrawn this claim (*see* ECF #19 at 6, Pg. ID 173.), and thus the Court dismisses it.

## CONCLUSION

It is **HEREBY ORDERED** that the Defendants' motion for summary judgment (ECF #18) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE.**

                                             s/Matthew F. Leitman
                                             MATTHEW F. LEITMAN
                                             UNITED STATES DISTRICT JUDGE

Dated:  September 24, 2015


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 24, 2015, by electronic means and/or ordinary mail.

                                             s/Holly A. Monda
                                             Case Manager
                                             (313) 234-5113